UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SAMUEL A. SHEPHERD,<br>    *Plaintiff*,<br><br>v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security<br>Administration,<br>    *Defendant*. | Case No: 2:23-cv-00066<br><br>Judge Christopher H. Steger |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Samuel A. Shepherd seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. § 401-34. [*See* Doc. 1]. The parties consented to entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 8].

Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Docs. 11, 12,[1] 18]. For reasons that follow, Plaintiff's request for relief [Docs. 11, 12] will be **DENIED**, the Commissioner's request for relief [Doc. 18] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

---

[1] Plaintiff's filings are styled as Motion for Relief Under Rules Five and Six of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) [Doc. 11] and Brief in Support of Plaintiff's Motion for Relief Pursuant to Rule Five and Six of the Supplemental Rules for Social Security Action Under 42 U.S.C. § 405(b) of the Federal Rules of Civil Procedure [Doc. 12]. Filing a motion and brief in support of the motion is consistent with the practice prior to the effective date of the new Supplemental Rules.

## II. Procedural History

On July 30, 2020, Plaintiff applied for disability insurance benefits under the Act, alleging disability as of November 1, 2016. (Tr. 19). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

Due to COVID-19, a telephonic hearing was held on June 1, 2022, that included Plaintiff's attorney. *Id*. Administrative Law Judge Benjamin Burton ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 35-59). During the hearing, Plaintiff "moved to amend the alleged onset date of disability to January 1, 2019." (Tr. 19). The ALJ then rendered his decision on June 14, 2022, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 26-27).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on June 20, 2023, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing briefs and this matter is ripe for adjudication.

**Findings by the ALJ**

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period of his alleged onset date of January 1, 2019, through his date last insured of December 31, 2019 (20 C.F.R. §§ 404.1571 *et seq.*).

3. Through the date last insured, the claimant has the following medically determinable impairments: degenerative disc disease, degenerative joint disease, cardiac arrhythmias, depression, anxiety (20 C.F.R. §§ 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 C.F.R. §§ 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2019, the alleged onset date, through December 31, 2019, the date last insured (20 C.F.R. §§ 404.1520(c)).

(Tr. 22-26).

### III. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, he is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20

C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider

evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

IV. **Analysis**

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. 2001) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)).

Plaintiff claims the ALJ erred in finding that Plaintiff does not have a severe impairment or combination of impairments regarding: (1) Plaintiff's physical impairments; (2) Plaintiff's mental impairments; and (3) Plaintiff's combination of impairments. [Doc. 12 at 10]. The Court will address each in turn.

A. **Physical Impairments**

Plaintiff states that he "has undergone a cervical disk fusion as well as a total right hip replacement." [Doc. 12 at 10]. He claims that "major surgical procedures such as a neck fusion and joint replacements are not slight abnormalities that would minimally affect [] Plaintiff's ability to do work activities." *Id.* at 10-11. He states that "Plaintiff's treating orthopedic surgeon Dr. Miller in August 2020, more than a year after [] Plaintiff's hip replacement, advised [] Plaintiff to return

to activity as tolerated." *Id.* at 11.

The Court notes that Plaintiff has had three major surgeries (Tr. 604-07, 616-18, 1165) and that the severity threshold "has been construed as a *de minimis* hurdle." *Higgs*, 880 F.2d at 862. However, "[t]he mere diagnosis of an ailment, of course, says nothing about the severity of the condition." *Apfel*, 1 F. App'x at 331 (quoting *Higgs*, 880 F.2d at 863) (cleaned up). "When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment." 1 F. App'x at 331.

In *Long*, the plaintiff received "a series of lumbar punctures to alleviate pressure from excess spinal fluid" that failed to provide relief from a pseudotumor cerebri. *Id.* at 327-28. Consequently, she underwent surgery to implant "a lumboperitoneal shunt in Long's lower spine that drained excess spinal fluid into her abdomen so that she could evacuate it during urination." *Id.* at 328. "Post-operative notes indicated that the surgery went well and show a recommendation that Long increase her activity as tolerated." *Id.* She subsequently experienced an improvement in various symptoms. *Id.* Headaches eventually returned, but her doctor was not sure they were caused by her pseudotumor cerebri. *Id.* Three and a half years after the surgery, she experienced "occasional low back pain with pain sometimes shooting in the area of the previous shunt." *Id.*

The Sixth Circuit upheld the ALJ's finding that Long did not have a severe impairment, stating:

> The record in this case does not contain a single statement by a treating[2] physician indicating that Long's health problems result in any specific work-impairing limitations. On the contrary, all medical evidence shows that treatment progressed well and that most of Long's ailments had been resolved or could be treated with prescription and over-the-counter medication.

---

[2] "The only medical evidence suggesting Long has any impairment at all comes from the non-examining state agency physicians, who specifically found that she could perform medium-level work." *Long*, 1 F. App'x at 332.

*Id.* at 332.

Here, Plaintiff points to no statements by any physician indicating that his health problems resulted in any specific work-impairing limitations. Further, the initial non-examining state agency reviewing physician, Sara Bomar, M.D., found insufficient evidence in the record to show disability. (Tr. 66). She opined that Plaintiff had no severe impairments or combination of impairments. *Id.* On reconsideration, another non-examining state agency reviewing physician, Dr. Karla Montague-Brown, M.D., found Dr. Bomar's assessment of insufficient evidence to show disability to be persuasive. She also opined that Plaintiff had no severe impairments or combination of impairments. *Id.*

As in *Long*, the medical evidence shows that treatment progressed well, and Plaintiff's ailments have largely resolved or were treated with medication. For instance, Plaintiff had cervical spine surgery in November 2015. (Tr. 1172). In March 2018, Plaintiff reported "he was doing fairly well until late January when he fell" due to tripping in a hole. (Tr. 497). Plaintiff's medication review showed that his only pain medication was taking Aleve as needed. (Tr. 498). While he had some pain from the fall, his doctor noted, "No medications were requested or written for him today." (Tr. 499). Plaintiff did have some neck pain in November 2019. (Tr. 1042-43). Since he was having GI issues with the Aleve, his doctor switched him to aspirin. *Id.* Four days later, x-rays showed "posterior spurring at C5-6 which has developed in the interval with an otherwise unremarkable exam." (Tr. 1040). At his next medical appointment ten months later, aspirin was still the only pain reliever listed in Plaintiff's medications. (Tr. 1036-37).

In October 2017, Plaintiff suffered a "moderately displaced femoral neck fracture after [a] fall." (Tr. 618). At the advice of Orthopedic Surgeon Bruce Miller, M.D., Plaintiff opted for a closed reduction surgery and pinning in hopes of avoiding total hip arthroplasty. *Id.* At a follow-

up visit in April 2018, Dr. Miller noted, "[Plaintiff] reports he is back to normal. He reports he is walking without assistive devices, placing full weight on the right lower extremity. His right hip and leg feel fine." (Tr. 609). Dr. Miller's physical exam noted "a nice reciprocal gait. He indeed is placing full weight on the right lower extremity, which is neurovascularly intact. He has excellent hip range of motion, flexion, extension, internal, and external rotation, pain free." *Id.* Unfortunately, by March 2019, Plaintiff developed significant hip arthritis. (Tr. 608). Dr. Miller noted, "[Plaintiff] is quite limited in his normal activities of daily living secondary to this posttraumatic arthritis of his right hip and he would like to go ahead and proceed with elective total hip arthroplasty." *Id.*

In April 2019, Plaintiff underwent hardware removal and right hip total arthroplasty. (Tr. 604). By August 2019, Dr. Miller's physical exam showed a "nice reciprocal gait. He still has a little bit of core weakness and a very slight Trendelenburg gait, mainly noticeable with single leg balance, but he has wonderful hip motion. Good hip stability. Neurologically intact." (Tr. 597). Dr. Miller also stated, "X-rays, AP pelvis and frog-leg lateral hip shows well placed total hip arthroplasty. No evidence of component loosening, malposition, or polyethylene wear." *Id.* Dr. Miller gave Plaintiff some home exercises for balance and core hip muscle strength and setup Plaintiff for a yearly checkup. *Id.* In August 2020, Dr. Miller noted Plaintiff had "[n]o complaints" except a little soreness "over the lateral aspect of the right hip." (Tr. 596). In his physical exam, Dr. Miller stated, "Physical examination of the right hip looks great. Well-healed surgical incision. No cellulitis. No drainage. No discharge. He is a little tender to palpation right at the tip of the greater trochanter along his hip abductor. Normal hip motion. Normal reciprocal gait, walking unassisted." *Id.* Dr. Miller also noted, "X-rays, AP pelvis and frog-leg lateral hip shows well placed total hip arthroplasty. No evidence of component loosening, malposition, or polyethylene wear.

Good bony ingrowth of both femoral and acetabular components." *Id.* Dr. Miller again gave Plaintiff home exercises, set a one-year follow-up, and "[e]ncouraged him to resume activities as tolerated." *Id.*

Based on Sixth Circuit caselaw and the medical evidence of record, the Court finds Plaintiff's argument regarding his physical impairments to be unconvincing. As in *Long*, the Court finds that the ALJ's determination of non-severity should be upheld due to the absence of opined limitations from a treating[3] source and evidence in the record showing improvement after surgery to the point that treatment by no more than medication was utilized. Therefore, the ALJ's decision of non-severity regarding Plaintiff's physical impairments is supported by substantial evidence.

### B. Mental Impairments

Plaintiff claims "that it was error for the ALJ to not consider depression and anxiety as severe impairments as well." [Doc. 12 at 11-12]. Plaintiff points to "an exam from a prior file from 2014 that opines that [] Plaintiff's ability to maintain concentration and persistence was moderately limited and his ability to adjust [to] work activity was mildly to moderately limited." *Id.* at 11. He also points to treatment from Dwayne Steffey, A.P.N., F.N.P., M.S.N.,[4] that "consistently noted that [] Plaintiff had depression and anxiety." *Id.*

Plaintiff only spends three sentences on this argument. The Court finds that it is functionally waived as "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

---

[3] And in this case, no such opinion from *any* physician.
[4] Nurse Practitioner Steffey will be referred to as N.P. Steffey.

However, the Court notes three things. First, the 2014 exam from a prior file holds next to no persuasive value because Plaintiff's claim only relates to 2019 (*see* Tr. 19, 22) and Plaintiff points to no other medical records mentioning depression and/or anxiety in 2015, 2016, or 2017. [Doc. 12 at 11].

Second, state agency reviewing psychologist Fawz Schoup, Ph.D., opined that evidence was insufficient to substantiate the presence of any mental disorders or evaluate Plaintiff's mental limitations. (Tr. 66-67). At the reconsideration level, state agency reviewing psychologist Norma Calway-Fagen, Ph.D., found Dr. Schoup's assessment to be persuasive. (Tr. 74). She opined that "[t]he claim remains insufficient to evaluate for mental [limitations]." *Id.*

Third, Plaintiff's reference to N.P. Steffey's treatment notes is incomplete. Plaintiff saw N.P. Steffey six times in 2018 and 2019 and only half of these visits mention depression and/or anxiety.[5] (*See* Tr. 1042-43, 1049-52, 1066-67, 1073-74, 1080-81). Additionally, though Plaintiff was referred to and had visits with other subspecialties during this time (Gastroenterology in December 2018, Tr. 1058-60; Cardiology in May 2019, Tr. 1045-46; Radiology in November 2019, Tr. 1040), there are no medical records reflecting referrals and/or visits to any mental health providers. (*See* Tr. 495-1314). Finally, Plaintiff's depression and anxiety did appear to increase after his date last insured as Plaintiff had five visits with N.P. Steffey from September 2020 to May 2021, and all of them mention anxiety and/or depression. (*See* Tr. 1021-22, 1030-37). However, treatment notes and testimony from the hearing reflect that this was due to Plaintiff having to care for his wife who was diagnosed with end-stage liver failure in February 2020. (Tr. 40, 47, 1021-22, 1030-37). Therefore, these five visits are not strongly probative of Plaintiff's depression and anxiety in 2019.

---

[5] Visits from March 2018, April 2018, and April 2019 mention depression and/or anxiety. Visits from August 2018, February 2019, and November 2019 do not.

Therefore, even if Plaintiff has not waived his argument regarding the severity of his mental impairments, his argument is not persuasive. Plaintiff's mental impairments of anxiety and depression were slight abnormalities that minimally affected his work ability in 2019. Therefore, the ALJ's finding regarding non-severity of Plaintiff's mental impairments is supported by substantial evidence.

### C. Impairments in Combination

Plaintiff states, "Even assuming that these impairments were not severe in isolation, which [] Plaintiff strongly disputes, the ALJ was also required to consider whether the impairments in combination would constitute a severe impairment." [Doc. 12 at 12]. Plaintiff only spends one other sentence on this line of argumentation. Therefore, Plaintiff has functionally waived his issue as well.

However, the Court notes that in the ALJ's findings of fact and conclusions of law, the ALJ wrote:

> 4. Through the date last insured, the claimant did not have an impairment *or combination of impairments* that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment *or combination of impairments* (20 C.F.R § 404.1521 *et seq.*).

(Tr. 22 (emphasis added)).

Next, the ALJ gave the definition of basic work activities and listed many examples of such from SSR 85-28, then stated:

> In reaching the conclusion that the claimant did not have an impairment *or combination of impairments* that significantly limited his ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.

(Tr. 22-23 (emphasis added)).

The ALJ then spent 13 paragraphs over the next four pages carefully and thoroughly discussing and analyzing the evidence of Plaintiff's physical and mental impairments. (Tr. 23-26). The ALJ then stated:

> The conclusion that the claimant does not have an impairment *or combination of impairments* that significantly limits his or her ability to perform basic work activities is consistent with the objective medical evidence and other evidence.
>
> Based on the foregoing, the claimant's physical and mental impairments, considered singly *and in combination*, do not significantly limit the claimant's ability to perform basic work activities. Thus, the claimant does not have a severe impairment *or combination of impairments*.

(Tr. 26 (emphasis added)).

Therefore, even if Plaintiff has not waived the issue of the severity of his impairments considered in combination, his argument is wholly unpersuasive. The ALJ gave a detailed and comprehensive discussion of Plaintiff's impairments and, contrary to Plaintiff's claim, clearly considered those impairments singly and in combination. Therefore, the ALJ's determination of non-severity for Plaintiff's combination of impairments is supported by substantial evidence.

## V. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's request for relief [Docs. 11, 12] will be **DENIED**, the Commissioner's request for relief [Doc. 18] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE